UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

RAY DWIGHT SLUSS, )
)
    Petitioner, )
)
v. ) Nos. 2:16-CV-346; 2:13-CR-90
) *Judge Jordan*
UNITED STATES OF AMERICA, )
)
    Respondent. )

## **MEMORANDUM OPINION**

Acting pro se, federal inmate Ray Dwight Sluss (Petitioner) moves the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 1].[1] The United States has responded in opposition, arguing, *inter alia*, that the § 2255 motion is untimely [Doc. 2]. Following those filings, Petitioner tendered a motion for status, then moved for leave to file a late reply to the Government's response and, at the same time, submitted his proposed reply [Docs. 3, 4, 4-1]. The Court will GRANT Petitioner's motions for status and to late-file his reply [Docs. 3-4] and will consider the reply in deciding this § 2255 motion. For the following reasons, the Court will DENY Petitioner's motion to vacate as outside § 2255(f)'s one-year statute of limitation.

### I.     RELEVANT BACKGROUND

A four-count indictment charged Petitioner with the following offenses: receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (a)(2) (Count one); possession of child pornography, a violation of 18 U.S.C. §§ 2252A(a)(5)(b) (Count two); and receipt of child pornography cartoons, in violation of 18 U.S.C. § 1466A(a)(1) (Counts three and four) [Doc. 3, Case No. 2:13-CR-90]. On February 4, 2014, pursuant to a negotiated plea agreement, Petitioner

---

[1] Unless otherwise noted, citations to the record refer to the underlying civil case, No. 2:16-CV-346.

pled guilty to Count one, the knowing receipt of child pornography [Docs. 36 and 38 (criminal minutes), Case No. 2:13-CR-90].

At the change of plea hearing, while Petitioner was under oath, the Court verified that he understood that, pursuant to the terms of the plea agreement, he was waiving his right to file an appeal. The Court nonetheless advised Petitioner, in accordance with the requirements of Rule 32(j)(1)(B) of the Federal Rules of Criminal Procedure, that he may have the right to appeal the sentence imposed. The Court informed Petitioner that he had fourteen days from the judgment to file a notice of appeal and that, if he requested and so desired, the Clerk of Court could prepare and file the notice of appeal for him. The government moved to dismiss the remaining counts at sentencing, and the Court referred the matter to the United States Probation Office for a presentence investigation report (PSR) [Doc. 38, Case No. 2:13-CR-90].

The probation officer disclosed the PSR on May 1, 2014; later sustained Petitioner's objection to paragraph 37 in the PSR; and filed a revised PSR on September 9, 2014 [Docs. 39 (sealed), 40, 64 (sealed), Case No. 2:13-CR-90]. The probation officer determined, based on Petitioner's total offense level of 32 and his criminal history category of III, that his Guideline imprisonment range was 151 to 188 months [Doc. 64 at ¶¶ 45, 53, Case No. 2:13-CR-90]. However, because the statutorily authorized minimum 15-year sentence[2] was greater than the minimum Guideline range, Petitioner's effective Guideline range became 180 to 188 months' imprisonment under USSG § 5G1.1(c)(2) [*Id.* at ¶¶ 74-75, Case No. 2:13-CR-90]. The probation officer also listed the number of images (4,344) and of videos (50) of child pornography, as well

---

[2] Petitioner's two prior state convictions for crimes similar to his federal offense upped the penalty for that offense, i.e., the knowing receipt of child pornography, to a mandatory minimum of 15 years' imprisonment to a maximum 40 years' imprisonment [Doc. 64 at ¶ 2 (citing 18 U.S.C. § 2252A(b)(1)), Doc. 36 at ¶ 5(a) (the part of the plea agreement containing Petitioner's stipulation that he had incurred two previous convictions for aggravated sexual exploitation of a minor), Case No. 2:13-CR-90].

as the length of almost half of the videos (22 videos were more than 5 minutes long) as factors that might warrant an upward departure from the Guideline range [*Id.* at ¶ 89, Case No. 2:13-CR-90].

The government then moved for an upward departure, and by judgment entered September 11, 2014, the Court granted the government's motion and imposed a 210-month term of incarceration, to be served consecutively to any sentences issued in Petitioner's two pending cases in the criminal Court for Washington County, Tennessee [Docs. 61, 65-66, Case No. 2:13-CR-90]. The sentence of imprisonment was to be followed by a life term of supervised release [Doc. 66, Case No. 2:13-CR-90]. Consistent with the waiver provision in Petitioner's plea agreement [Doc. 36 at ¶ 11(a), Case No. 2:13-CR-90 (waiving his right to file a direct appeal)], he did not pursue a direct appeal.

Under the prison mailbox rule, Petitioner constructively filed this pro se motion to vacate on November 8, 2016, the date he placed it in the prison mail system [Doc. 1 at 11 (Petitioner's certification, under penalty of perjury, that on that date he placed his § 2255 motion in the prison mailing system)]. *See* Fed. R. App. P. 4(c)(1)); *see also Houston v. Lack*, 487 U.S. 266, 271-76 (1988); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999). As noted, the United States argues in its response that Petitioner's § 2255 motion is untimely and, alternatively, that the claims raised therein are waived, procedurally defaulted, baseless, and do not warrant relief [Doc. 2].

In Petitioner's reply, he addresses each of the government's theories as to why he is not entitled to relief [Doc. 4-1]. However, because the Court finds that the United States' timeliness argument is dispositive of this § 2255 motion, the Court will discuss only Petitioner's arguments offered to counter the assertion that his motion to vacate is untimely.

## II. STATUTE OF LIMITATION

The one-year period for filing a motion to vacate commences on one of four triggering dates. 28 U.S.C. § 2255(f)(1)-(4). In the typical case, as is this one, the triggering date in the first subsection of § 2255 is the date that a conviction becomes final. *Id.* § 2255(f)(1). A conviction becomes final under subsection one of § 2255(f) "at the conclusion of direct review." *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001) (citing *United States v. Torres*, 211 F.3d 836, 839 (4th Cir. 2000)).

As observed, Petitioner did not file a direct appeal from his September 11, 2014, judgment of conviction. Therefore, Petitioner's conviction became final on Friday, September 26, 2014, upon the lapse of the 14-day period in which he could have filed a notice of appeal (September 12, 2014[3] + 14 days = Friday, September 26, 2014). *See* Fed. R. App. P. 4(b)(1)(A); *see also Gillis v. United States*, 729 F.3d 641, 644 (6th Cir. 2013) (observing that "[a] conviction becomes final when the time for direct appeal expires and no appeal has been filed" (citing *Sanchez–Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004)).

Because Petitioner did not file a notice of appeal within the allotted 14 days from judgment, § 2255(f)(1)'s one-year statute of limitation began running on September 27, 2014, and expired on September 28, 2015 (September 27, 2014 + 365 days = September 27, 2015. Because the 365th day fell on Sunday, September 27, 2015, Petitioner had an extra day, until Monday, September 28, 2015, to file a timely § 2255 motion.).

---

[3] Rule 6(a)(1) of the Federal Rules of Civil Procedure directs that the day of the event that triggers a period that is stated in days is excluded from the computation of that period. *See* Rule 12, Rules Governing § 2255 Proceedings (allowing application of the Federal Rules of Civil Procedure so long as they are not inconsistent with statutory provisions or the § 2255 Rules).

Petitioner's motion to vacate was filed on November 8, 2016, and it therefore comes to the Court more thirteen months too late under § 2255(f)(1).

### III. EQUITABLE TOLLING

Equitable tolling "allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). The one-year statute of limitation in § 2255(f) is not jurisdictional and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (quoting *Holland,* 560 U.S. at 649). Equitable tolling is applied sparingly, *Robertson*, 624 F.3d at 784, and a movant bears the burden of showing that equitable tolling is appropriate. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). Only reasonable diligence is required to qualify for equitable tolling of § 2255(f)'s one-year statute of limitation, not the maximum feasible diligence. *Holland*, 560 U.S. at 653.Whether equitable tolling is warranted is a fact-intensive inquiry. *Id.* at 654.

In Petitioner's reply, he contends that he is entitled to equitable tolling because of the extraordinary circumstances presented by his abandonment by counsel and by his mental and emotional incompetence and suicidal mental state at the time of his plea [Doc. 4-1 at 2-5].

5

A.  **Extraordinary Circumstance**

   1.  **Attorney Abandonment**

First, Petitioner maintains that "[s]hortly after the guilty plea, finally the counsel left Petitioner without any advise (sic) regarding appeal" and thus "literally abandoned" him" [*Id.* at 4]. As support for Petitioner's assertion that he was abandoned by counsel, he maintains that counsel failed to pursue any possible appeal, did not advise Petitioner as to any post-conviction challenge, and, instead, advised him after the plea agreement, "that he would have no appeal and no post conviction challenge, period" [Doc. 1 at 11].

"[S]erious instances of attorney misconduct" that "fail to satisfy professional standards of care" can "amount to egregious behavior and create an extraordinary circumstance" that would call for equitable tolling. *Holland*, 560 U.S. at 649-52. An attorney's misconduct can rise to the level of an extraordinary circumstance without any demonstration of bad faith, dishonesty, divided loyalty, mental impairment, or the like. *Id.* at 649, 652. However, a showing of an exceptional failure "to perform reasonably competent legal work, to communicate with [his] client[], to implement [his] client['s] reasonable requests, to keep [his] clients informed of key developments in [his] case[], and to never abandon a client" might qualify as an exceptional circumstance. *Id.* at 652-52.

Even so, equitable tolling is not warranted by attorney negligence, whether ordinary or gross, *id.* at 649, 651-52, and *id.* at 657 (Alito, J. concurring in part and concurring in the judgment) because an attorney customarily acts as a petitioner's agent and because a petitioner "bears the risk of negligent conduct on the part of his [attorney]." *Maples v. Thomas*, 565 U.S. 266, 281 (2012). Yet, an attorney who abandons his client without notice severs the attorney-client relationship and, thus, is no longer acting, or failing to act as a representative of the client. *Id.* at 281. A petitioner

in this situation cannot be held responsible for acts or omissions of an attorney who has abandoned him and cannot be faulted for failing to act on his own behalf when he lacks reason to believe that the attorney is not representing him. *Id.* at 281, 283.

Abandonment may be shown where a petitioner adduces evidence that counsel failed to file a federal petition on time, and that, over a period of years, counsel almost completely failed to communicate with a petitioner or to respond to his numerous inquiries and requests for information that would have allowed him to monitor his case. *Holland*, 560 U.S. at 652. Similarly, a claim of attorney abandonment can arise under "uncommon facts" such as: (1) attorneys file a collateral review petition on behalf of a prisoner, (2) then leave the firm that the prisoner has secured to represent him (3) without notifying their client (4) or the court and (5) without any appearance by other members of the firm (6) or any attempt to substitute counsel, so that (7) when the trial court denies the petition and (8) the appeal period lapses, the prisoner is unaware that he is not being represented by the attorneys who filed the petition in the first place. *Maples*, 565 U.S. at 275-277. A petitioner who is "left without any functioning attorney of record," without a "reason to suspect that he lacked counsel," and without notice "that he had better fend for himself" can establish that his attorney has abandoned him. *Id.* at 288-89.

Nothing approaching these "uncommon facts" or attorney failures have been alleged here. *See Holland*, 560 U.S. at 654-55 (noting that the petitioner "has alleged certain facts that go well beyond any form of attorney negligence") (Alito, J., concurring in part and concurring in the judgment). Petitioner does not contend that his attorney stopped communicating with him or the Court, ceased to function as his counsel, or did not continue to represent him or act on his behalf after entry of Petitioner's guilty plea. Indeed, Petitioner could not so allege because during that time, counsel filed a notice of objections to the PSR [Doc. 40, Case No. 2:13-CR-90]; a motion

7

for an extension of time to brief Petitioner's objections to restitution [Doc. 43, Case No. 2:13-CR-90]; a brief on the issue of restitution [Doc. 45, Case No. 2:13-CR-90]; a reply brief on that issue [Doc. 54, Case No. 2:13-CR-90]; and a sentencing memorandum [Doc. 58, Case No. 2:13-CR-90]. Moreover, counsel represented Petitioner throughout his sentencing [Doc. 65 (sentencing minutes), Doc. 66 (judgment), Case No. 2:13-CR-90].

The attorney conduct alleged by Petitioner (failure to advise him about an appeal and telling him after he entered his guilty plea that he could not appeal or seek post-conviction relief) correlates more closely with attorney negligence or even a substantive claim of ineffective assistance,[4] rather than to a claim of attorney abandonment. The Court thus concludes that Petitioner has not alleged the kind of serious unprofessional behavior that would amount to abandonment by his attorney. *See Young v. Westbrooks*, 702 F. App'x 255, 264 (6th Cir. 2017) (observing that "the facts in *Maples* and *Holland* indicate a higher bar for abandonment" because both cases involved "a whole host of attorney misconduct"), *cert. denied sub nom. Young v. Mays*, 138 S. Ct. 749, 199 L. Ed. 2d 614 (2018); *Mote v. United States*, No. 2:12-CR-234, 2018 WL 8544777, at *2, 5 (S.D. Ohio Mar. 6, 2018) (finding that a claim that counsel failed to file an appeal is not egregious misconduct tantamount to abandonment and does not constitute an extraordinary circumstance to excuse an untimely § 2255 motion).

2. **Mental Incompetence**

Petitioner's pro se arguments are difficult to decipher, but, as the Court understands them, they suggest that *Holland*'s reasoning involving attorney abandonment likewise applies to a claim

---

[4] *See Maples*, 565 U.S. at 281-82 (explaining that, in contrast to attorney negligence, a "markedly different situation is presented . . . when an attorney abandons his client without notice"); *see also Holland*, 560 U.S. at 650 (commenting that the petitioner "does not argue that his attorney's misconduct provides a substantive ground for relief" and discerning that, instead, he was advancing an attorney-abandonment claim).

8

of a petitioner's mental incompetence and thus would call for equitable tolling[5] [Doc. 4-1 at 5]. Petitioner's alleged mental and emotional incompetence and suicidal mental state, by his own allegations, occurred at the time of his arrest and plea. Petitioner entered his guilty plea on February 4, 2014 [Doc. 38, Case. No. 2:13-CR-90].

Unfortunately for Petitioner, the period that is pertinent in this equitable tolling analysis is one year after his conviction became final. Here, the relevant period began on September 28, 2014, and ended on September 28, 2015. Therefore, Petitioner's alleged mental incompetence and suicidal frame of mind that purportedly existed more than six months before § 2255(f)(1)'s one-year clock started ticking is irrelevant in the equitable tolling inquiry and cannot constitute an extraordinary circumstance.

**B.    Diligence**

Even if Petitioner had shown the existence of an extraordinary circumstance, he has not pled any facts to show diligence. Although Petitioner recognizes that diligence in pursuit of one's rights is a necessary component of equitable tolling and that he bears the burden of satisfying that component [Doc. 4-1 at 2], he has offered no allegations to illustrate that he was diligent during the pertinent one-year period. For example, Petitioner does not maintain that he contacted his attorney or the Court asking about an appeal during § 2255(f)(1)'s one-year period, although the Court advised him, during the plea colloquy, that his notice of appeal had to be filed within fourteen days from the judgment and that the Clerk could prepare and file the notice for him if he wished.

---

[5]    As part of his timeliness argument, Petitioner maintains that he "was mentally and emotionally incompetent at the time of arrest and plea because of his desperate and disappointed situation . . . [and that he] was suicidal" [Doc. 4-1 at 3].

Petitioner has a duty to monitor his appeal. Absent any factual assertions to show that Petitioner was reasonably diligent in checking the status of a direct appeal (the absence of counsel's advice as to an appeal is claimed to be an extraordinary circumstance), equitable tolling is not justified. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 463 (6th Cir. 2012) (declining to equitably toll the limitations statute because a petitioner "did not diligently monitor the status of his appeal"); *Robertson*, 624 F.3d at 786 (observing that "to be entitled to equitable tolling, [the petitioner] will also have to satisfy the second prong of the test that 'he has been pursuing his rights diligently'" (quoting *Holland*, 560 U.S. at 649)); *Patterson v. Lafler*, 455 F. App'x 606, 611 (6th Cir. 2012) (finding that, in a claim of attorney abandonment, reasonable diligence requires a petitioner, *inter alia*, to make "diligent and consistent efforts to contact his attorney about deadlines"). There is nothing alleged by Petitioner or that is apparent in the record to suggest that he was pursuing his rights diligently during § 2255(f)'s one-year period.

## IV. CONCLUSION

Accordingly, the Court will DENY and DISMISS this motion to vacate as having been filed outside § 2255(f)'s one-year statute of limitation governing the filing of motions to vacate. The Court also will CERTIFY that any appeal from this action would not be taken in good faith, Fed. R. App. P. 24(a), and consequently will DENY Petitioner leave to proceed *in forma pauperis* on appeal. Because the § 2255 motion is being denied as untimely, the Court will not address Respondent's other arguments offered to support the denial of Petitioner's motion to vacate.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability ("COA") should issue. A COA should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner

whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). If there is a plain procedural bar and the district court is correct to invoke it to resolve the case, and a reasonable jurist could not find that either that the dismissal was error or that a petitioner should be allowed to proceed further, a COA should not issue. *Slack*, 529 at 484.

In this case, the procedural bar is plain and, thus, the Court finds that reasonable jurists could not find that its ruling on the timeliness of the motion was debatable or wrong. Because reasonable jurists could not disagree with the Court's denial of the § 2255 motion as time-barred and could not conclude that matter is "adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the Court will DENY issuance of a COA.

**A SEPARATE ORDER WILL ENTER.**

ENTER:

s/ Leon Jordan
United States District Judge